UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CIVIL CASE NO. 05-313-KKC

SHANNON BILLY RILEY,                                           PETITIONER

VS.             **REPORT AND RECOMMENDATION**

JOHN MOTLEY, WARDEN,                                           RESPONDENT

*******

    This matter is before the Court upon the "Third Amended Petition" for habeas corpus relief (DE#31) by the pro se petitioner. Having carefully considered the entire record, including the Third Amended Petition (DE#31), Answer and Motion for Summary Judgment (DE#38, 39), Amended Memorandum in Support (DE#46), Petitioner's Response to Motion for Summary Judgment (DE#47), and numerous related filings (DE#1, 14, 15, 17-19, 21, 22, 26, 27, 30, 42), the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

**I. Findings of Fact**

    On the morning of June 28, 2002, Shannon Riley robbed the Tri-County National Bank in Barbourville, Kentucky. He was wearing a mask and armed with a shotgun. He told the tellers to fill his pillowcase with money and then fled with $6,799.00 from the bank's money drawer. He drove off in a relative's car. Several witnesses notified police of the license plate number, and police officers arrested Riley approximately thirty minutes later as he was exiting such vehicle. Currency with sequential numbers, taken from the bank's money drawer, were found inside the vehicle. Riley matched the witnesses' physical description of the robber. Riley (age 29 at the time) told police he had been with his 17-year-old girlfriend, but officers confirmed that there had been no one home at her residence.

    Riley was indicted on state charges of "Robbery in the First Degree" and "Persistent Felony Offender in the First Degree". Through his counsel, Riley entered a not guilty plea. His jury trial proceeded in the Knox County Circuit Court on November 12-13, 2002, with Judge Roderick Messer presiding. During voir dire proceedings, Riley became agitated and disruptive. The trial judge sought to

maintain order and decorum by ordering Riley to cease interrupting with belligerent outbursts. Riley disregarded the judge, used profanity, and refused to comply with the bailiff's request that he sit down at the table with defense counsel. Specifically, the state record indicates that:

> "[I]t was Appellant's disruptive behavior during voir dire that forced the judge to take action to maintain order and decorum. The record indicates that during voir dire, as the judge was addressing the jurors, Appellant disrupted the courtroom with a loud outburst of profanity, saying "f- - - ass." Buddy we got a problem here – a major problem." The judge immediately excused the jury and called the litigants to the bench. Appellant explained that he believed there were witnesses who had not been spoken to, and he was not getting a fair trial. The judge warned Appellant that he had his say, and if he disrupted the trial again, he would have him handcuffed and gagged. The record indicates that Appellant then replied by saying "Well let's do it, Buddy. Do what you got to do. Gag me, handcuff me, 'cause this is horseshit." Appellant's reply gave the judge assurance that he intended to continue disrupting, and he ordered Appellant to be handcuffed and gagged ..." *Riley v. Commonwealth*, 2003-SC-0366-MR, unpublished, at \*5; see DE#15, Appx. 23.

When the jury was reconvened and proceedings resumed after recess, defendant's restraints were promptly removed. The videotaped record confirms that Riley remained free of restraints for the rest of the trial.

The jury returned a guilty verdict. The court imposed a sentence of 50 years imprisonment, which was later adjusted to 25 years. Judgment of conviction was entered on May 5, 2004. Through counsel, Riley direct appealed, alleging that 1) his restraints had rendered his trial "unfair", and 2) his "mugshot" photograph should not have been introduced into evidence at trial. On August 26, 2004, the Kentucky Supreme Court affirmed the conviction, *see* DE#15, Appx. 19-29 for copy of opinion. Riley did not seek certiorari. Riley, pro se, subsequently filed an untimely petition for rehearing[1], followed by a supplemental brief [2] which

---

[1] In his untimely petition for rehearing, see DE#17, attached exhibit, Riley alleged a host of disconnected issues in conclusory fashion. He argued that his appellate counsel was ineffective for not filing a motion complaining that the bailiff had ordered Riley to sit down at the defense table, that the trial court should have held an evidentiary hearing on his allegation that "there is several bits of evidence that could be used in this case to say that I haven't been

attempted to raise numerous additional issues. On February 17, 2005, the Kentucky Supreme Court denied his untimely request for rehearing.

Petitioner did not seek state post-conviction relief pursuant to RCr 11.42 or any other state rule. Rather, on or about June 3, 2005, Riley filed the present pro se federal habeas petition, followed by an amended petition on June 24, 2005. DE#1, 14. After the warden moved to dismiss (DE#15) for Riley's failure to exhaust remedies, Riley tendered a second amended petition on July 20, 2005. DE#17. Riley was thereafter granted leave (DE#24) to file it, and it was entered in the docket at DE#27. Riley also filed numerous additional briefs (DE#18-19, 21, 22) and "objections" (DE#26), although no Report and Recommendation existed at such time.

As the prisoner had asserted and withdrawn numerous issues, and had filed multiple briefs making conflicting statements about what claims were being raised, the Magistrate Judge directed petitioner to concisely identify the exact issues he actually wished to assert. DE#29. Riley disregarded the specific instructions in such order, and instead, on December 29, 2005, tendered a third amended petition (DE#31) and a "Motion to Hold Petition in Abeyance" (DE#30). The respondent has filed a motion for summary judgment with a supporting memorandum, to which petitioner has responded (DE# 47). This matter is now fully briefed and ripe for review.

## II. Issues Presented

Although the pro se prisoner's claims are difficult to follow, he alleges that

---

given a fair trial", that counsel allowed the prosecution to use a "fabricated witness", that appellate counsel placed "false" information in the appeal brief, that the Kentucky Supreme Court had "misconstrued" the law, that various trial facts were "wrong", that appellate counsel was "ineffective" because the Kentucky Supreme Court affirmed his conviction, and that he did not have a full copy of all trial videotapes. He also complained about a show cause order, several witnesses, and various discovery matters. Such issues were not timely presented to the state courts, nor were they presented in a procedurally appropriate manner.

[2]In his supplemental brief to the state petition for rehearing, Riley further complained that he went to trial after "only fifty-five days", challenged the introduction of certain evidence against him, alleged that trial counsel was ineffective at a pretrial hearing for not conferring with Riley about it in advance, reargued the restraint issue, and expressed dissatisfaction with his attorney's arguments regarding such issue. Such issues were not timely presented to the state courts, nor were they presented in a procedurally appropriate manner.

his appellate counsel was constitutionally ineffective for not raising certain issues on direct appeal. Specifically, he contends that his appellate counsel should have argued that: 1) "The courtroom bailiff dening (sic) the defendant access to the court violated due process of the 14th Amendment"; 2) "Trial court failed to hold an ex parte hearing on the defendant's request to discharge counsel by way of ordering him to be shackled and gagged to force him to trial with counsel that he had an actual conflict with violated 5th, 6th, and 14th Amendments"; and 3) "Jury's exposure of defendant in shackles and gagged was inherently prejudicial with the sheriff's deputy and prisoner identification violated 5th, and 14th Amendments". DE#31, p.2.

## III.  Conclusions of Law

**Statutory Jurisdiction**

Pursuant to 28 U.S.C. §2254(a), "... a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." At the time this petition was filed, petitioner was incarcerated in state custody under the challenged murder conviction at the Eastern Kentucky Correctional Complex in Kentucky.

**Applicability of AEDPA,  Successiveness**

The present habeas petition was filed subsequent to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the AEDPA fully applies to this petition. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000);  *Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001). The AEDPA requires the court to determine initially whether a habeas petition is "successive".  See 28 U.S.C. §2244(a); *In re Sims*, 111 F.3d 45 (6th Cir. 1997)(per curiam).  Riley indicates he has not filed any previous petitions (other than the amended versions in this case), and research does not reflect any other federal habeas cases with respect to this conviction.

**AEDPA One-Year Period of Limitations**

The AEDPA provides that "a 1-year period of limitations shall apply to an application for a writ of habeas corpus... [t]he limitation period shall run from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." or several other dates not applicable here. 28 U.S.C. §2244(d)(1). The Supreme Court of Kentucky affirmed Riley's conviction on August 26, 2004. He had 90 days to file for certiorari, *see Bronough v. Ohio*, 235 F.3d 280 (6th Cir. 2000), but did not do so. Riley subsequently filed an untimely pro se motion for rehearing,[3] which was denied on February 17, 2005. Pursuant to Rule 13 of the Rules for the United States Supreme Court, the 90-day period for seeking certiorari ran from the date Riley's conviction was affirmed on August 26, 2004, rather than from the date of denial of his untimely petition for rehearing.[4] The AEDPA one-year period of limitations then began to run when such 90-day time period expired on November 24, 2004.

On June 3, 2005, Riley signed his initial federal habeas petition and presumably gave it to prison authorities for mailing on such date. This is deemed to be the date of filing for Riley's petition under the "mailbox rule" for pro se prisoners. See *Houston v. Lack,* 487 U.S. 266, 273, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)(recognizing mailbox rule for pro se prisoner appeals); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002)(applying mailbox rule to pro se habeas petitions). Thus, Riley timely filed his initial federal habeas petition within the one year statute of limitations.

To the extent that Riley has amended such petition several times and has added various claims, it should be pointed out that he filed his "first amended petition" (DE#14) on or about June 27, 2005, and tendered his "second amended

---

[3]Riley's petition for rehearing was untimely because Rule 76.32(2) of the Kentucky Rules of Civil Procedure requires such petitions to be filed "within 20 days after the date on which the opinion was issued..."

[4]Rule 13 of the Rules for the United States Supreme Court expressly provides:

> "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice). But if a petition for rehearing is *timely filed* in the lower court by any party, the time to file the petition for a writ of certiorari ....runs from the date of the denial of the petition for rehearing...." (Italic added).

petition" (DE#17) on or about July 20, 2005. Riley timely filed both within the AEDPA one-year period of limitations. With respect to the tendered third amended petition, Riley signed it on December 22, 2005, which is beyond the one-year period of limitations.[5]

With respect to the claims of ineffective assistance of appellate counsel asserted in his third amended petition, Riley has previously asserted them in earlier versions of the petition (see DE#27, Second Amended Petition, issues #4-10), and therefore, the third amended petition (DE#31) would be timely under *Mayle v. Felix*, – U.S. –, 125 S.Ct. 2562, 2571, 162 L.Ed.2d 582 (2005), *rehearing denied*, 126 S.Ct. 25 (2005). There, the United States Supreme Court held that an amended habeas petition filed after the expiration of the one-year period of limitations is not timely and "does not relate back (and thereby avoid the AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading". *Id*.

**Exhaustion**

The exhaustion issue has already been addressed at length in a prior Report and Recommendation (DE#33) and need not be fully repeated here. Suffice it to say, that although Riley's claims of ineffective assistance of appellate counsel have not been exhausted in state court, the exhaustion requirement should be excused because such claims are not generally cognizable on post-conviction review in the state courts of Kentucky. See *Lewis v. Commonwealth,* Ky., 42 S.W.3d 605, 614 (2001)(holding that "[i]neffective assistance of appellate counsel is not a cognizable issue in this jurisdiction"); *Roberson v. Commonwealth*, 2004 WL 2676306 at *1 (Ky. App.)("the Kentucky Supreme Court has repeatedly held that ineffective assistance of appellate counsel is not a cognizable issue"); *Anderson v. Commonwealth*, 2003 WL 22149296, *9 (Ky. 2003); *Wilkerson v. Commonwealth*, 2004 WL 758348 at *1 (Ky. App.); *Vunetich v. Commonwealth*, Ky., 847S.W.2d 51 (1990); *Hicks v. Commonwealth*, 825 S.W.2d 280, 281 (1992). In other words, "there is an absence of available State corrective process" for such constitutional issue. 28 U.S.C.A. §2254 (b)(1)(B)(I).The respondent acknowledges this. See DE#35, ¶3.

Regardless, the AEDPA provides that unexhausted claims may be denied on

---

[5]December 22, 2005 is the date Riley signed it and presumably gave it to prison authorities for mailing. Such document was entered in the docket on December 29, 2005.

the merits. See 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). Riley's unexhausted claims of ineffective assistance of appellate counsel are meritless and provide no basis for habeas relief.

**Standard of Review**

The respondent correctly points out that federal habeas review is generally governed by the standard set forth in the AEDPA, which provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

However, that standard cannot be applied here, as there is no underlying state decision regarding any claims of ineffective assistance of appellate counsel. "In these unusual circumstances, a federal court has no alternative but to conduct an independent review of the claim, because there is no foundation in the state court proceedings for AEDPA deference." *Barnes v. Elo*, 339 F.3d 496, 2003 WL 21844494, *5 (6th Cir. 2003); and see, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003). In *McKenzie*, the Sixth Circuit Court of Appeals explained that where "there are simply no results, let alone reasoning, to which this court can defer... any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law'... would be futile." *Id*. at 727. "If deference to the state court is inapplicable or inappropriate, we exercise our independent judgment and review the claim *de novo.*" *Id.,* citing *Hain v. Gibson,* 287 F.3d 1224, 1229 (10th Cir. 2002); *Cox v. Miller,* 296 F.3d 89, 101

(2nd Cir. 2002); *Moore v. Parke,* 148 F.3d 705, 708 (7th Cir. 1998)(reviewing claim *de novo* if AEDPA deference is found inapplicable).

Nonetheless, it should be emphasized that a federal court reviewing a habeas petition does not "sit as an additional state appellate court" for all issues raised by a prisoner in the state courts." *Slaughter v. Parker*, 187 F.Supp.2d 755, 782 -783 (W.D. Ky. 2001), citing *Gemmel v. Buchkoe*, 358 F.2d 338 (6th Cir. 1966), *cert. denied,* 385 U.S. 962 (1967). The United States Supreme Court has repeatedly held that habeas review is an extraordinary remedy and "will not be allowed to do service for an appeal." *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994); *United States v. Frady,* 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Only alleged constitutional violations are reviewable on habeas.

**Whether Petitioner's Appellate Counsel was Constitutionally Ineffective**

It is well-settled that criminal defendants have the right to effective legal representation on direct appeal. *Douglas v. California*, 372 U.S. 353, 357-58, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985). "A defendant is entitled to the effective assistance of counsel in his first appeal of right." *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004). Hence, claims of ineffective assistance of appellate counsel present a constitutional issue. The performance of appellate counsel is properly reviewed under the standard enunciated by the United States Supreme Court in the well-known *Strickland* decision. Also see *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1888 (2006).

To establish ineffective assistance of counsel, the defendant must show that his counsel's performance was deficient *and* that the deficient performance prejudiced the defense so as to render "the trial unfair and the result unreliable". *Strickland ,* 466 U.S. at 687. The objective standard of reasonableness is highly deferential and includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Prisoners "claiming ineffective assistance of counsel under *Strickland* have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). The same burden applies regardless of whether the prisoner is alleging ineffective assistance of trial or appellate counsel. *Id.*; see also, *Munson v. Kapture*, 384 F.3d 310, 316 (6th Cir. 2004). The prejudice prong "is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Rust v. Zent,* 17 F.3d

155, 162 (6th Cir. 1994).

With respect to the performance of appellate counsel, the United States Supreme Court explained in *Evitts* that such counsel "must be available to assist in preparing and submitting a brief to the appellate court, *Swenson v. Bosler,* 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967)(*per curiam*), and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim," citing *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *Entsminger v. Iowa,* 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967). Riley's appellate counsel prepared and timely filed a lengthy brief arguing two substantial issues in considerable detail. Such arguments were supported with appropriate citations to authority. Specifically, appellate counsel argued the issues of 1) prejudice due to the physical restraint of Riley at trial, and 2) the admission of allegedly prejudicial evidence, i.e. Riley's "mugshot" photograph. Appellate counsel fully represented Riley and clearly performed as an "active advocate" on defendant's behalf.

Although Riley alleges that the attorneys at the Department of Public Advocacy "conspired" to represent the interests of the trial court and prosecution, the respondent correctly points out (see DE#46, p. 11) that Riley's allegation amounts to nothing more than his muddled disagreement with appellate counsel's professional judgment about what issues to raise on direct appeal and Riley's misunderstanding of the relevant law. See DE#47, p. 4-5 and attached exhibits A-E. The record reflects that Riley inquired about certain issues with counsel, but that counsel informed him that such claims were not adequately supported by the record or should be raised by means of a motion pursuant to RCr 11.42.

On habeas, Riley contends that his appellate counsel should have argued the following additional issues: 1) "[t]he courtroom bailiff dening (sic) the defendant access to the court violated due process of the 14th Amendment"; 2) "Trial court failed to hold an ex parte hearing on the defendant's request to discharge counsel by way of ordering him to be shackled and gagged to force him to trial with counsel that he had an actual conflict which violated 5th, 6th, and 14th Amendments"; and 3) "Jury's exposure of defendant in shackles and gagged was inherently prejudicial with the sheriff's deputy and prisoner identification violated 5th, and 14th Amendments". DE#31, p.2. However, Riley has not shown that any omitted issues were nearly as persuasive than those actually presented. His allegations in his third amended petition are conclusory and not supported by citations to authority.

The United States Supreme Court has held that an "attorney need not advance every argument, regardless of merit, urged by the appellant." *Jones v.*

*Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Evitts*, 469 U.S. at 394, 105 S.Ct. at 835. The Court explained that the "process of winnowing out weaker arguments on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986), quoting *Barnes,* 463 U.S. at 751-52. Consistent with such Supreme Court precedent, the Sixth Circuit Court of Appeals has also held that appellate counsel need not "raise every nonfrivolous claim on direct appeal". *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002); and see, *Williams v. Bagley*, 380 F.3d 932, 2004 WL 1800647, *33 (6th Cir. (Ohio)), and *Coleman v. Mitchell*, 268 F.3d 417, 430-31 (6th Cir. 2001). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo,* 281 F.3d at 579. Riley has not shown that any "ignored issues are clearly stronger than those presented" and has not overcome the presumption that his counsel's performance was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Riley alleges that his appellate counsel should have argued that "the courtroom bailiff denied Riley access to the court". Such argument is frivolous. Counsel appropriately did not raise such nonsensical issue on appeal. Riley is complaining because the bailiff told him to sit down at the table with defense counsel when he entered the courtroom. Riley refused to sit down, used profanity, disobeyed the court's order to stop interrupting, and eventually, was restrained by court security officers upon the order of the trial judge. Riley's entire argument is based on his own self-serving mischaracterization of events and reflects his fundamental misunderstanding of the orderly steps in a trial and the authorized function of court security personnel. Riley was not free to disrupt the trial, nor was he "denied access to the court" simply because he was told to sit down at the beginning of the proceedings. The bailiff did not abridge any of Riley's constitutional rights by following courtroom procedures, and Riley had no right to disrupt the courtroom and shout expletives at the judge.

Although the petitioner also argues that counsel should have filed a motion pursuant to Kentucky CR 75.08 to supplement the record with his version of events, this is a matter of state procedural law not cognizable on habeas review. See *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Riley was afforded full access to the court process, received a jury trial, and was represented by counsel at all stages. The bailiff did not deny Riley any "access" to the court, and appellate counsel appropriately decided not to raise such allegation on appeal. See *Norris v. Schotten,* 146 F.3d 314, 336 (6th Cir. 1998), *cert. denied*,

525 U.S. 935 (1998)(holding that "[a]ppointed counsel cannot be deemed ineffective for failing to raise frivolous claims"). To prevail on habeas review, a defendant must demonstrate an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson,* 507 U.S. 619, 637-638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Riley has not shown that his appellate counsel was constitutionally ineffective.

In *Williams v. Taylor*, 120 S.Ct. 1495, 1513 (2000), the United States Supreme Court observed that the prejudice component of the *Strickland* test "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair....Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Riley's appellate counsel chose to raise stronger arguments on appeal and to forego other arguments that were unsupported or frivolous. "It is the obligation of any lawyer--whether privately retained or publicly appointed--not to clog the courts with frivolous motions or appeals." *Penson v. Ohio*, 488 U.S. 75, 91, 109 S.Ct. 346, 356 (1988), citing *Polk County v. Dodson*, 454 U.S. 312, 323, 102 S.Ct. 445, 452, 70 L.Ed.2d 509 (1981).

Riley's second ground for alleged ineffective assistance of appellate counsel also does not satisfy the requirements of the *Strickland* standard. Riley contends that his appellate counsel should have argued that the trial court should have held a hearing on the alleged "conflict" of trial counsel. "In order to establish a Sixth Amendment violation of the right to effective counsel, the defendants must demonstrate an actual conflict of interest that adversely affected the lawyer's performance." *United States v. Brown*, 124 F.3d 200 (6th Cir. 1997), citing *Cuyler v. Sullivan*, 4446 U.S. 335, 350 (1980); see also, *Mickens v. Taylor*, 535 U.S. 162, 168, 122 S.Ct. 1237, 1242, 152 L.Ed.2d 291 (2002)(holding that a defendant must demonstrate that a conflict of interest actually adversely affected counsel's representation); *Holloway v. Arkansas*, 435 U.S. 475, 487-91, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Although Riley cites *Cuyler* and *Holloway,* he has not pointed to any facts suggesting any actual conflict of interest by his trial counsel. See DE#1, p. 18; DE#21, p. 5; DE#47, p. 8. There was no joint representation in this case. *Cf.* Rule 44 (c)(1) of the Federal Rules of Criminal Procedure.

Rather, Riley is referring to his own momentary disgruntlement with trial

counsel prior to Riley's disruption of the courtroom proceedings as a "conflict".[6] However, the record reflects that Riley subsequently calmed down and proceeded through trial with his appointed trial counsel. The record does not suggest that Riley was unable to communicate with such trial counsel and does not suggest any reason to believe that trial counsel did not ably and effectively represent Riley at all stages. The respondent points out that Riley had briefly complained at an earlier pretrial hearing that he had not met with separate counsel who appeared at the pre-trial hearing, but Riley did not ask to discharge such counsel. The record reflects that Barbara Carnes appeared for Riley at the preliminary hearing, Bruce Lominac represented Riley at trial, and Karen Maurer represented Riley on appeal. Although Riley has vaguely claimed that trial counsel could have done more and that "there is several bits of evidence that could be used to in this case to say that I haven't been given a fair trial" (see DE# 27, p. 3; DE#31, p. 3; DE#47, p. 9), appellate counsel appropriately decided to raise other stronger issues. Riley was also specifically informed by appellate counsel that if he wished to raise issues of ineffective assistance of trial counsel, he could file a state motion pursuant to RCr 11.42. See DE#47, attached exhibits A, D, E.

     To the extent Riley complains that he didn't want to proceed with the trial and wanted to fire his counsel, he could have personally called this to the judge's attention in an appropriate and timely manner. For example, he could have instructed counsel file a written motion to withdraw before the morning of trial or could have respectfully asked the trial judge at the pre-trial hearing about obtaining different counsel. He did not do this. Even assuming that counsel did orally inform the trial judge at the beginning of the trial that Riley wanted to fire him, appellate counsel's decision not to raise the issue of whether the trial court should have held a hearing on Riley's last-minute outburst does not provide a basis for habeas relief, as appellate counsel raised other issues on direct appeal that were much better supported by the record. Riley acknowledges that his appellate counsel considered such issue, but opted not to raise it because there was a dearth of evidence substantiating that defendant had properly asserted such issue. See DE#47, attached exhibits A-D. Counsel's exercise of professional judgment is presumed reasonable under *Strickland,* and Riley has not rebutted this presumption. He has not shown that his appellate counsel's performance was objectively deficient, nor

---

[6] Riley contends that trial counsel informed the trial judge at the beginning of trial that Riley wanted to fire him, but that the trial judge overruled such belated request and proceeded. DE#47, p. 8.

has he shown any resulting prejudice under *Strickland*.

Finally, Riley's third alleged ground for ineffective assistance of appellate counsel is also without merit. He alleges that his appellate counsel should have argued that "the trial court ordering the defendant Shackled and Gagged (sic) without proper determination violated 5th, 6th, and 14th Amendments". This issue is easily dispensed with, because the record plainly shows that appellate counsel *did* fully raise and argue such issue. To the extent Riley argues that "appellate counsel failed to properly raise Ground F shackling", see e.g., DE#22, p.1, he appears merely to disagree with the result achieved, i.e. he disagrees with the decision of the Supreme Court of Kentucky affirming his conviction. Of course, an attorney does not have to prevail on every argument in order to be constitutionally effective. The Sixth Amendment does not require counsel to obtain acquittal or reversal in order to be deemed constitutionally effective. "[A]nalysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); and see, *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.; *United States v. Maxwell*, 2002 WL 1784263, *3 (W.D. Tenn. 2002). Riley was represented by counsel at all stages of the trial process, and in light of the overwhelming evidence of guilt, he was convicted. He was then afforded a timely direct appeal that was fully argued and briefed by new counsel. Appellate counsel *did* raise the issue of the propriety of Riley's restraint and did not ignore any issues that were clearly stronger than those presented. Petitioner has not shown that his appellate counsel was constitutionally ineffective. Petitioner has shown no basis for habeas relief.

To the extent Riley may be attempting to reassert the "restraint" issue directly, he has not shown that the Supreme Court of Kentucky's decision regarding his brief restraint was "contrary to or an unreasonable application of clearly established Supreme Court precedent" or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). Although Riley points to *Deck v. Missouri*, – U.S. –, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) in his reply brief (DE#47, p. 14), such case was not in effect at the time of Riley's conviction and appeal. The United States Supreme Court has explained that "clearly established law as determined by this Court refers to the holdings ... of this

Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); and see, *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)(holding that the pertinent law is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.").

In any event, the United States Supreme Court's decision in *Deck* does not support Riley's argument. The *Deck* decision found the *routine* use of shackles without specific justification objectionable, whereas Riley was hand-cuffed and gagged for a brief time only after repeated belligerent outbursts, profanity, and the threat of continued disruption of court proceedings. The restraints were removed when the proceedings resumed in front of the jury. In *Deck*, the United States Supreme Court held that due process forbids the *routine* use of physical restraints visible to jury during guilt phase of criminal trials.

Thus, contrary to Riley's allegations, the Supreme Court did not forbid all restraint of criminal defendants at trial, but rather, indicated that a trial court may properly order a defendant restrained when the circumstances of the case justify it. *Id*. at 2015 (emphasizing the "the important need to protect the courtroom and its occupants"). The United States Supreme Court explained that "essential state interests such as physical security, escape prevention, or courtroom decorum" may justify restraint of a defendant. *Deck*, 125 S.Ct. at 2012. The trial judge, in the exercise of his or her discretion, may "take account of special circumstances, including security concerns, that may call for shackling." *Id*.

On appeal in Riley's case, the Supreme Court of Kentucky correctly identified *Illinois v. Allen*, 397 U.S. 343-344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970) as the controlling precedent at the time. See DE#46, Appx. 7. There, the United States Supreme Court held:

> "[W]e explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen*, 397 U.S. at 343, 90 S.Ct. at 1060 - 1061.

The Supreme Court of Kentucky discussed the three constitutionally permissible

ways set forth in *Allen* for a trial judge to handle a disorderly defendant, and found that the trial court's decision was proper under *Allen* and not an abuse of discretion. Even if Riley were reasserting this as a direct issue, he has not shown that the decision was "contrary to or an unreasonable application of clearly established Supreme Court precedent" or that it resulted in a decision that was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). The use of restraints for a brief time was justified by the circumstances in Riley's case, and such restraints were promptly removed when the jury reconvened and proceedings resumed after recess. Riley's appellate counsel fully appealed the propriety of this brief restraint and whether it resulted in prejudice that rendered his trial unfair. Appellate counsel was certainly not ineffective on such basis.

**No Hearing Required**

Only if the court finds a factual dispute and that the petitioner may be entitled to relief should it grant an evidentiary hearing. *Witham v. United States*, 355 F.3d 501, 506 (6th Cir. 2004); *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). No hearing is required if the petitioner's allegations are contradicted by the record, inherently incredible, or are merely conclusions rather than statements of fact. *Arredondo v. United States*, 178 F.3d 778 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). An evidentiary hearing would not help resolve any issues regarding ineffective assistance of appellate counsel in this case, and an evidentiary hearing is not warranted.

**V. Certificate of Appealability**

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. §2253(c)(2), and shall indicate which specific issues satisfy the "substantial showing" requirement, 28 U.S.C. §2253(c)(3). Also see *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2002); *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed2d 542 (2000). Riley has not made a substantial showing of the denial of his constitutional right to effective appellate counsel. The record plainly show that his appellate counsel timely filed a lengthy brief arguing two substantial issues supported by appropriate citations to authority. Riley has not shown that the additional issues he believes counsel should have raised were stronger. In *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000), the United States Supreme

Court emphasized that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal". See also, *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004), *cert. denied*, 544 U.S 1003 (2005) (observing that a defendant "does not have a constitutional right to have his counsel press nonfrivolous points if counsel decides as a matter of professional judgment not to press those points"), *Wright v. United States*, 182 F.3d 458, 466 (6th Cir. 1999)("[a]ppellate counsel is not ineffective simply he or she decides not to raise every possible argument on appeal"), *Coleman v. Mitchell,* 244 F.3d 533, 541 (6th Cir. 2001), and *Anderson v. United States*, 221 F.3d 1333, 2000 WL 875729, *2 (6th Cir. (Ky.)).

## RECOMMENDATION

It is **RECOMMENDED** that:

a) the "Third Amended Petition" (DE#31) by the pro se prisoner, Shannon Riley, should be **DENIED**;
b) the "Motion for Summary Judgment" (DE#39) by the respondent should be **GRANTED**;
c) a certificate of appealability should not be issued.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 22nd day of June, 2006.

Signed By:
**J.B. Johnson, Jr.**
United States Magistrate Judge